**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                              No. CR 09-0047 JB

CRAIG BENALLY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** comes before the Court on the Sentencing Memorandum on Behalf of Defendant Craig Benally, filed November 13, 2009 (Doc. 42). The Court held a sentencing hearing on November 30, 2009. The primary issue is whether a sentence at the low end of the advisory sentencing guideline range is appropriate for Defendant Craig Benally's crime of manslaughter. Because the United States has not shown the presence of any special factors that suggest the Court should deviate from its usual practice of selecting the low end of the guideline range, the Court will sentence C. Benally to the low end of the range, 30 months.

**FACTUAL BACKGROUND**

       C. Benally, a forty-year old member of the Navajo Nation, has remained in or very near Shiprock, New Mexico most of his life. See Sentencing Memorandum at 1-2. C. Benally reports that a cousin and his father abused him as a young child, and he watched his father abuse his mother at various times during his childhood. See id. at 3. C. Benally also struggles with alcoholism, and has sought treatment on numerous occasions. See id. at 3.

       C. Benally's criminal history includes a 1998 domestic-violence conviction, and two DWI

convictions from 2001 and 2009.  See United States' Response to Defendant's Sentencing Memorandum at 4, filed November 23, 2009 (Doc. 43)("Response").  C. Benally recently divorced his wife of fifteen years, and his two children live with their mother.  C. Benally had been paying monthly child support, but he lapsed in his payment and was put in jail.  He was released two days before the accident that resulted in the death of the victim.  See Sentencing Memorandum at 2.

On October 11 and October 12, 2008, C. Benally consumed alcohol over the course of the two days, and, in that period of time, slept only five to six hours.  See id. at 4.  On October 12, 2008, he was driving a motor vehicle on the highway and caused a collision in which one of his passengers, Dennison Billy, died.  See Response at 3.  Three other passengers -- Calvert Benally, Berdina Nez, and Aldercia Peshlakai -- suffered serious injuries.  See id. at 3.  C. Benally walked away from the scene of the accident and was found later at his brother-in-law's nearby home.  See id. at 3.

After C. Benally was arrested in this case, criminal investigators interrogated him.  This interrogation occurred approximately nineteen to twenty hours after the accident.  During the interrogation, C. Benally admitted to having consumed at least three forty-ounce bottles of malt liquor over the course of the day.  He stated that he did not clearly remember certain events of the day.  Specifically, C. Benally did not have clear memories of the moments leading up to the accident.  C. Benally admitted that he was driving at the time of the accident, although he stated that he did not remember if he looked for oncoming traffic as he tried to cross oncoming traffic lanes, or if he slowed or even stopped for oncoming traffic.  C. Benally indicated that he was too intoxicated to remember these details.  See Sentencing Memorandum at 4.  In a written statement, C. Benally stated that, on October 12, 2008, he and others drove to Colorado to purchase alcohol in his vehicle, returning to Hogback, New Mexico around 1:00 p.m., and that he "really [doesn't]

remember leaving to head back to Shiprock." Sentencing Memorandum at 4.  C. Benally spent approximately fifty-two days in tribal custody upon being arrested on federal charges and was released on December 4, 2008.

## PROCEDURAL BACKGROUND

On January 8, 2009, a federal grand jury returned a four-count indictment charging C. Benally with Involuntary Manslaughter, pursuant to 18 U.S.C. §§ 1153 and 1112, and three counts of Assault Resulting in Serious Bodily Injury, pursuant to 18 U.S.C. §§ 1153 and 113(a)(6), all of which occurred on October 12, 2008 in San Juan County, District of New Mexico, within Indian Country.  On August 10, 2009, in a written plea agreement, C. Benally pled guilty to Count I of the indictment.  The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") on October 21, 2009.

The USPO determined that, under the sentencing guidelines, the base offense level is 22. See PSR ¶¶ 38-43, at 11-12.  After a reduction for acceptance of responsibility, the USPO calculated the total offense level to be 19.  See PSR ¶ 45, at 12.  Based upon C. Benally's offense conduct and his criminal history category of I, the PSR recommends a guideline sentencing range of 30 to 37 months.  See PSR ¶ 83, at 23.  C. Benally filed a sentencing memorandum, analyzing his upcoming sentencing pursuant to the United States Sentencing Guidelines as well as pursuant to 18 U.S.C. § 3553(a). He does not argue that his recommended guideline sentence is unreasonable, but requests that the Court impose a sentence at the low end of this recommended range.  Specifically, he requests a sentence of 30 months -- the lowest recommended guideline sentence.  C. Benally is not requesting a sentence of probation.  In fact, C. Benally hopes to take advantage of the Bureau of Prison's drug-and-alcohol treatment program.

On November 23, 2009, the United States filed its Response to Defendant's Sentencing

Memorandum.  See Doc. 43.  The United States requests that the Court, after careful consideration of all of the factors in this case -- including the applicable provisions of the sentencing guidelines and the factors listed in 18 U.S.C. § 3553(a) -- impose a sentence at the top of the applicable guideline range.  The United States opposes C. Benally's request for a sentence at the low end of the range, given the reductions that he will likely receive pursuant to the plea agreement and the corresponding calculations in the PSR.  The United States recommends, given the seriousness of the offense, coupled with C. Benally's history of alcohol abuse, a guideline sentence of 37 months.

At the time of his sentencing, C. Benally had spent roughly 10-11 months in custody.  The time that C. Benally has spent in tribal custody has not been credited to another sentence and therefore is correctly applied to his pre-trial confinement in this case.  C. Benally has been incarcerated in this case from October 12, 2008 to December 4, 2008, and from January 9, 2009 to November 30, 2009.[1]

Rita Billy, Dennison Billy's sister, has provided receipts regarding losses that her family has sustained.  R. Billy's receipts appear to be directly related to the offense, and C. Benally does not object to the proposed restitution amount.  See 18 U.S.C. § 3663(a)(1)(B)(i)(I) ("[T]he loss sustained by each victim as a result of the offense."); 18 U.S.C. § 3663(b)(3), (4); PSR ¶ 32, at 9-10, Table.  None of the surviving victims could be contacted regarding any harm they might have incurred that could go toward C. Benally's restitution amount.  See PSR ¶¶ 34-35, at 10-11.

---

[1] C. Benally's older sister, Teri Benally, was brutally attacked in Albuquerque, New Mexico on July 3, 2009.  After the family gathered and fully consulted with medical professionals, the decision was made to remove T. Benally from life support.  T. Benally died on July 4, 2009.  The Albuquerque Journal reported T. Benally's death on July 7, 2009.  The Albuquerque Police Department has ruled the death a homicide.  C. Benally represents that he was extremely close to his sister.  While incarcerated at the Regional Correctional Center, C. Benally has seen a psychiatrist on a number of occasions and, based upon the continued depression that he is experiencing, is taking anti-depressant medication.

**LAW REGARDING APPROPRIATE SENTENCES**

The sentencing guidelines are advisory. See United States v. Booker, 543 U.S. 220, 234 (2005). Because the sentencing guidelines are no longer considered mandatory, a court has the authority to impose a non-guideline sentence if the facts and circumstances support such a sentence. Taking into account the provisions of the 18 U.S.C. § 3553(a), a reasonable sentence under United States v. Booker is one that "reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant." United States v. Booker, 543 U.S. at 261-62 (quoting 18 U.S.C. § 3553(a)(2)(B), (C)). A reasonable sentence also is one that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. Section 3553(a) continues to require sentencing judges to take certain factors into account when imposing sentence, including the kinds of sentences and the sentencing ranges that the guidelines establish. See 18 U.S.C. § 3553(a)(4). While no presumption of reasonableness attaches to a guideline sentence in the district court, the trial court may conclude that a guideline sentence is a "rough approximation" of a sentence that would properly balance the factors set forth in 18 U.S.C. § 3553(a) and achieve its objectives. Rita v. United States, 551 U.S. 338, 350 (2007).

**ANALYSIS**

The penalties for involuntary manslaughter range from a maximum prison term of eight years, plus three years of supervised release, a fine of $250,000.00, and restitution as the Court orders. As such, this crime qualifies as a Class A felony, the highest level crime under the federal sentencing statutes. See 18 U.S.C. § 3581. After consideration of the factors set forth in 18 U.S.C. § 3553(a), as well as the sentencing guidelines for similar crimes by individuals with similar criminal histories, the Court concludes that a sentence at the low end of the advisory guideline range

is appropriate. A careful analysis of the sentencing factors do not show any unusual factors.

Initially, the Court notes that neither party has sought a variance or departure. Both parties agree that the advisory guidelines provide, at least, a rough approximation of a sentence satisfying the factors of 18 U.S.C. § 3553(a). See Transcript of Hearing at 4:20-23 (taken November 30, 2009)("Tr.")(Robbenhaar)("The Government cites United States Supreme Court precedent of Rita for the guideline -- or for the proposition that a guideline sentence may be considered a rough approximation of a sentence. I think that's correct.")[2]; Response at 6 ("A guideline sentence is a 'rough approximation' of a sentence that would achieve the sentencing factors set forth in 18 U.S.C. § 3553(a).")(quoting Rita v. United States, 551 U.S. at 350). The Court agrees. After considering the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, the factual background that the PSR provides, and the factors in 18 U.S.C. § 3553(a), the Court concludes that a sentence within the advisory sentencing guideline is appropriate.

The sentencing guidelines recommend a sentence of 30 to 37 months, or from two and one-half years to just over three years. Without minimizing in any way the offense conduct, and accepting fully the social policy behind punishing drunk drivers who cause accidents that hurt or kill others, the Court believes that a low-end sentence is appropriate. Once the Court concludes that a guideline sentence is appropriate, in an effort to promote predictability in its sentencing, the Court often begins with the low-end of the advisory guideline range and determines whether the case exhibits factors that warrant a higher sentence. To apply a different procedure at the behest of the United States in this case would begin to introduce unpredictability and disparity in sentencing of

---

[2] The Court's citations to transcripts of hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

defendants with similar criminal histories that committed similar crimes. Applying that process, the Court has given substantial thought to the circumstances of the offense and of C. Benally's life, and concludes that it should sentence C. Benally at the bottom of the guideline imprisonment range.

The Court first must consider the seriousness of the offense. The crime of conviction, Involuntary Manslaughter, pursuant to 18 U.S.C. §§ 1153 and 1112, is a serious crime by anyone's account. It is, however, one that lacks an element of intent, making it less culpable than some other forms of criminal conduct. The nature and circumstances, however, and the number of individuals that C. Benally harmed with the conduct, make the lack of intent a small comfort. Nevertheless, a sentence of 30 months is not insignificant, and so the Court believes it reflects the seriousness of the offense notwithstanding that it is at the bottom of the guideline range.

The Court does not wish to minimize in any way the offense conduct, and the Court accepts that drunk drivers are appropriately punished with incarceration when they hurt or kill others. Nonetheless, the Court finds that a low-end sentence here more accurately reflects Mr. Benally's history and characteristics. By all accounts, C. Benally is a hard-worker with a good employment history and appears to be a valuable member of society. He seems intelligent and is fairly well-educated. His statements to the Court during the sentencing hearing sounded genuinely remorseful and well articulated compared to the majority of defendants that the Court sentences. See Tr. at 10:4-21 (Benally).[3] Furthermore, C. Benally's background -- in particular, that his alcoholic father, who died when C. Benally was twelve-years old, encouraged C. Benally to drink alcohol at a very young age -- suggests that a low-end sentence of 30 months is sufficient to promote the statutory

---

[3] Roberto Ortega, Assistant United States Attorney, represented that he agreed with the Court's assessment of C. Benally's remorsefulness for his conduct. See Tr. at 11:6-23 (Ortega)("I think Mr. Benally does show his remorse and does show that he takes responsibility for what occurred.").

objectives in this case. A 30-month sentence will effectively punish C. Benally, just as it would effectively deter others who might consider engaging in similar conduct. Moreover, given the particular facts of this case, and specifically C. Benally's history and characteristics, a suggested guideline sentence of 30 months will serve the goals of criminal sentencing.

The Court is convinced that it does not need to go to the high end of the range to get to the root of the problem here, which is Mr. Benally's alcoholism. Whether the Court sentences at the high end of the range or the low end of the range, he will eventually be released and, if Mr. Benally's problem has not been addressed, he may continue to pose a danger to society through the behavior of drinking and driving. Considering that fact, the Court believes that a 30-month sentence punishes Mr. Benally as effectively as one at the high end of the guideline range.

The Court is concerned about deterrence, and finds that is the factor that most weighs in favor of a 37-month sentence. The Court finds, however, that the slight added deterrence -- both specific and general -- that 7 more months in prison might cause is not justified in this case. Furthermore, while nothing in the sentencing process is certain, and predicting a defendant's future behavior is inevitably fraught with risk, the Court believes it is likely that, given what has occurred here, Mr. Benally will not repeat this conduct.[4] Thus, given the facts of this case, the Court finds that the suggested guideline sentence of 30 months will sufficiently serve the goal of adequate deterrence, both specifically to C. Benally and generally to members of the public who might be tempted to drink and drive. The Court believes that a sentence of 30 months reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment. In conjunction with

---

[4] Mr. Ortega represented that he agreed that C. Benally is not likely to re-offend. See Tr. at 13:14-16 (Ortega)("I suspect that Mr. Benally, given what he's said today, will not likely re-offend and be before this Court . . . .").

the conditions of supervised release that the Court will impose, which will help C. Benally overcome his alcohol problems with appropriate education, training, and care, the Court also finds that this sentence adequately protects the public.

Finally, while it is not the task of a district court to come up with a reasonable sentence, but to come up with one that reflects these factors under 18 U.S.C. § 3553(a), the Court finds 30 months is a more reasonable sentence than one at the top end of the range. The Court does not find any aggravating factors that counsel the Court to move up into the high end of the range. In sum, the facts and circumstances demonstrate that a sentence of 30 months effectively serves the statutory purposes of 18 U.S.C. § 3553(a). A 30-month sentence is sufficient without being greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

**IT IS ORDERED** that the request for a sentence at the low end of the sentencing guideline range in the Sentencing Memorandum on Behalf of Defendant Craig Benally is granted. The Court sentences C. Benally to a term of 30 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Roberto Ortega
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Robbenhaar
  Assistant Federal Public Defender
Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*